UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JODIE SISCO individually and on behalf of her minor son JOSHUA SISCO | CASE NO. |
| VERSUS | SECTION |
| THE UNITED STATES OF AMERICA | JUDGE: |
| | MAG. |

**FEDERAL TORT CLAIMS ACT COMPLAINT**

**NOW INTO COURT,** through undersigned counsel come Jodie Sisco, individually and on behalf of her minor son, Joshua Sisco, who respectfully represents that:

NATURE OF THE ACTION

1. This is an action to recover damages for the United States of America's employees: Mohammed Hadi, M.D; Kevin Joseph, M.D; and Laurie Salas, N.P. medical negligence in failing to treat and diagnose James Sisco's lung cancer. The medical records patently state:

> **Patient with a 6.2 cm right upper lobe lesion with multiple satellite lesions present. Pt. apparently seeing pulmonology/ cardiology with LSU but no idications [sic] that patient knows about the lesion from a CTA done by LSU on 4/23/2012.**

It was not until 90 days before his death that the United States of America's employees realized that multiple studies suggestive of cancer had not been acted upon:

PARTIES

2. Complainants herein are:

A. JODIE SISCO, a natural person of full age of majority, widow of James Sisco, and a resident of Louisiana; and

B. JOSHUA SISCO, a natural person of full age of majority, the biological son of James Sisco and Jodie Sisco, and a resident of Louisiana.

3. Made defendants herein is:

A. THE UNITED STATES OF AMERICA, is sued for Plaintiffs' personal injuries caused by the negligent or wrongful acts or omission of its employees. Those employees were acting within the course and scope of their office or employment under circumstances where the United States, if a private person, would be liable to Plaintiffs in accordance with the laws of the State of Louisiana, *See*, 28 U.S.C. 1346(b).[1]

JURISDICTION

4. This Court has exclusive jurisdiction to adjudicate Jodie and Joshua Sisco's FTCA claim against the United States of America, pursuant to 28 U.S.C. §1346(b)(1). Jodie and Joshua Sisco's claim is for personal injury and wrongful death caused by the negligence of United States' employees acting within the course and scope of their employment and under circumstances where the United States, if a private person, would be liable to Claimants in accordance with Louisiana law. Jodie and Joshua Sisco's claims accrued after January 1, 1945.

5. This Court has subject matter jurisdiction to adjudicate Jodie and Joshua Sisco's FTCA claim against the United States of America, pursuant to 28 U.S.C §2675(a). On June 5, 2014, Jodie and Joshua Sisco timely instituted their claims with the United States Department of Health and Human Services (DHH) – the appropriate Federal agency. To date, more than 6 months have elapsed since Jodie and Joshua Sisco timely instituted their claims. Per 28 U.S.C. §2675(a) DHH's failure to make final disposition of Jodie and Joshua Sisco's claim within 6 months is deemed a final denial of the claim. Accordingly, Jodie and Joshua Sisco have exhausted their administrative rights, prior to instituting the instant action.

6. This Court has personal jurisdiction over the United States of America.

[1] Pursuant to Fed. R. Civ. Proc. Rule 4(e) the United States of America must be served by: (1) delivering a copy of the summons and of the complaint to the United States attorney for the Eastern District of Louisiana, and (2) sending a copy of the summons and complaint to the Attorney General of the United States at Washington D.C.

VENUE

7. Venue is proper in the Eastern District of Louisiana, pursuant to 28 U.S.C. §§ 1391(e)(1) and 1402(b). The United States' employees whose conduct is at issue reside in the Eastern District of Louisiana, except for Dr. Mohamed Hadi; the events, acts, and omissions, giving rise to Josie and Joshua Sisco's claim occurred in the Eastern District of Louisiana; and Jodie and Joshua Sisco reside within the Eastern District of Louisiana.

STATUTORY BASIS OF LIABILITY AGAINST THE UNITED STATES OF AMERICA

8. Per 28 U.S.C. § 2671 et seq. commonly known as the "Federal Tort Claims Act" (FTCA) the United States of America is liable – for its employees' negligence – to Petitioners in the same manner and to the same extent as a private individual under like circumstances.

9. The United States of America's liability is predicated specifically on 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries, wrongful death, and resulting damages that form the basis of this complaint, were proximately caused by the negligence, wrongful acts and/or omissions of employees of the United States of America through its agency, the Department of Health and Hospitals (DHH).

10. The United States of America has admitted that at the time of the incident Drs. Hadi, Joseph, and Salas, N.P. were acting within the course and scope of their employment with the St. Charles Community Health Center, Inc. an entity deemed eligible for coverage under the Federal Tort Claims Act by DHH.[2]

11. Since Drs. Hadi, Joseph, and Salas, N.P., where United States' employees acting within the course and scope of their office or employment when the negligence occurred, the

[2] *See*, 2:15-cv-01205-SM-SS Doc. 5-1.

United States of America, if a private person, is liable to Jodie and Joshua Sisco in the same manner and to the same extent as a private individual under the laws of the State of Louisiana.

PROCEDURAL CAPACITY

12. Jodie Sisco has procedural capacity to file the instant action for damages on behalf of her minor child – Joshua Sisco. Jodie Sisco is Joshua Sisco's biological mother and his natural tutor. Further, Joshua Sisco's biological father James Sisco expired on September 23, 2012.

FACTUAL ALLEGATIONS

13. Upon information and belief, on or about February 11, 2011, James Sisco ("Sisco") presented to the emergency room, with complaints of shortness of breath, nausea, and weakness.

14. Upon information and belief, the attending ER physician ordered a chest x-ray.

15. Upon information and belief, the chest x-ray showed a potential abnormal growth in Sisco's right lung.

16. Upon information and belief, Sisco was diagnosed with COPD and a right upper lung nodule. Sisco was ordered to follow up with primary care physician immediately.

17. Upon information and belief, for years Sisco had entrusted his and his family's primary medical care to the St. Charles Community Health Center ("SCCHC") and its staff medical providers.

February 17, 2011 visit to Dr. Hadi

18. Upon information and belief, on or about February 17, 2011, 6 days after the ER visit, Sisco presented to his primary care physician, Dr. Mohammed Hadi at the St. Charles Community Health Center.

19. Upon information and belief, during the February 17, 2011 visit, Sisco communicated to Dr. Hadi that a chest x-ray at the ER showed an abnormal growth in his right lung.

20. Upon information and belief, at the time Sisco was a 54 year old white male, with a history of almost 40 years of tobacco use, and now an abnormal growth in his right lung.

21. Upon information and belief, Dr. Hadi ordered a chest CT and referred Sisco to a pulmonologist.

<u>February 25 Scan reveals growths indicative of cancer</u>

22. Upon information and belief, on or about February 25, 2011, 8 days after consulting Dr. Hadi, Sisco underwent the Chest Scan (February 25 Scan) that Dr. Hadi had ordered.

23. Upon information and belief, the February 25 Scan revealed several growths in Sisco's lung suggestive of cancer, including a 6 cm growth in Sisco's right lung.

24. Upon information and belief, the February 25 Scan's interpreting radiologist's suggested that his findings be correlated with PET CT scan to determine if a biopsy was necessary.

25. Upon information and belief, on or about March 15, 2011, SCCHC requested, via fax, the results of Sisco's February 25 Scan.

26. Upon information and belief, after February 25, 2011, Dr. Hadi continued to treat Sisco, without following up on the February 25 Scan results.

27. Upon information and belief, on or about April 1, 2011, Sisco sought medical care from Dr. Hadi at SCCHC; Dr. Hadi did not follow up on the February 25 Scan results; Dr. Hadi

did not follow the February 25 Scan radiologist's recommendations; and Dr. Hadi did not communicate the February 25 Scan results to Sisco.

28. Upon information and belief, on or about April 8, 2011, Sisco sought medical care from Dr. Hadi at SCCHC; Dr. Hadi did not follow up on the February 25 Scan results; Dr. Hadi did not follow the February 25 Scan radiologist's recommendation; and Dr. Hadi did not communicate the February 25 Scan results to Sisco.

June 10 Scan shows more signs indicative of cancer

29. Upon information and belief, on June 10, 2011, Sisco presented to the pulmonologist to whom Dr. Hadi had referred him (Dr. Hadi's Pulmonologist). Upon information and belief, Dr. Hadi's Pulmonologist ordered a chest CT without contrast.

30. Upon information and belief, that same June 10, 2011, Sisco underwent the chest scan ordered by Dr. Hadi's pulmonologist (June 10 Scan).

31. Upon information and belief, the June 10 Scan was compared with the February 25 Scan. Upon information and belief, a comparison of the June 10 Scan and the February 25 Scans showed that Sisco's lung growth was becoming more solid.

32. Upon information and belief, Dr. Hadi's Pulmonologist was copied on the June 10 Scan report.

33. Upon information and belief, on or about November 8, 2011, Sisco sought medical care from Dr. Hadi at SCCHC; Dr. Hadi did not follow up on the February 25 Scan results; Dr. Hadi did not follow the February 25 Scan radiologist's recommendations; Dr. Hadi did not communicate the February 25 Scan results to Sisco; Dr. Hadi did not follow up on the June 10 Scan results; Dr. Hadi did not consult with his referral pulmonologist; and Dr. Hadi did not communicate the June 10 Scan results to Sisco.

34. Upon information and belief, on or about January 4, 2012, Sisco sought medical care from Dr. Hadi at SCCHC; Dr. Hadi did not follow up on the February 25 Scan results; Dr. Hadi did not follow the February 25 Scan radiologist's recommendations; Dr. Hadi did not communicate the February 25 Scan results to Sisco; Dr. Hadi did not follow up on the June 10 Scan results; Dr. Hadi did not consult with his referral pulmonologist; and Dr. Hadi did not communicate the June 10 Scan results to Sisco.

35. Upon information and belief, on or about January 21, 2012, Sisco sought medical care from Dr. Hadi at SCCHC; Dr. Hadi did not follow up on the February 25 Scan results; Dr. Hadi did not follow the February 25 Scan radiologist's recommendations; Dr. Hadi did not communicate the February 25 Scan results to Sisco; Dr. Hadi did not follow up on the June 10 Scan results; Dr. Hadi did not consult with his referral pulmonologist; and Dr. Hadi did not communicate the June 10 Scan results to Sisco.

36. Upon information and belief, on or about February 6, 2012, Sisco sought medical care from Dr. Hadi at SCCHC; Dr. Hadi did not follow up on the February 25 Scan results; Dr. Hadi did not follow the February 25 Scan radiologist's recommendations; Dr. Hadi did not communicate the February 25 Scan results to Sisco; Dr. Hadi did not follow up on the June 10 Scan results; Dr. Hadi did not consult with his referral pulmonologist; and Dr. Hadi did not communicate the June 10 Scan results to Sisco.

37. On April 12, 2012, Sisco presented to SCCHC, where he was attended to by Laurie Salas, N.P. Salas, N.P., made no mention of the lung lesions, or asked for a follow up on any of the imaging studies that Mr. Sisco had undergone.

<u>April 23 Scan shows even more signs indicative of cancer</u>

38. Upon information and belief, on or about April 23, 2012, Sisco underwent a chest CTA (April 23 Scan).

39. Upon information and belief, the April 23 Scan shows a growths in Sisco's right lung that are highly indicative of cancer.

40. Upon information and belief, the April 23 Scan's interpreting radiologist noted that the growth in Sisco's lung was starting to destroy his ribs. Upon information and belief, the April 23 Scan was flagged for communication with Sisco's physicians.

41. Upon information and belief, SCCHC received the April 23 Scan results.

<u>Dr. Joseph discovers that Sisco's Cancer has gone untreated for months</u>

42. Upon information and belief, by May 3, 2012, Sisco's health was in dire straits.

43. Upon information and belief, on or about May 3, 2012, Sisco called SCCHC to request a same-day medical appointment. Dr. Hadi was unavailable that day, so Sisco elected to see Dr. Kevin Joseph, at SCCHC.

44. Upon information and belief, prior to Dr. Hadi, Dr. Joseph had been Sisco's primary care physician at SCCHC.

45. Upon information and belief, during the May 3, 2012 visit, Dr. Joseph looked in Sisco's medical chart and discovered that his lung growths had gone untreated for months.

46. Upon information and belief, Dr. Joseph placed the following notation in Sisco's medical records:

> **Patient with a 6.2 cm right upper lobe lesion with multiple satellite lesions present. Pt. apparently seeing pulmonology/ cardiology with LSU but no idications [sic] that patient knows about the lesion from a CTA done by LSU on 4/23/2012.** Will

> add an oncology referral and have pt. come in to discuss issue.
> KOJ

Lung biopsy confirms Sisco's cancer

47. Upon information and belief, on or about June 14, 2012, Sisco underwent a lung biopsy. Upon information and belief, the extracted lung mass was found to be, "positive for malignancy, non-small cell, moderately differentiated keratinizing squamous cell carcinoma."

48. Upon information and belief, on or about June 25, 2012, James' oncologist confirmed the cancer diagnosis.

49. Upon information and belief, on or about June 29, 2012, Dr. Hadi's Pulmonologist noted that Sisco had either stage III or IV lung cancer.

50. Upon information and belief, by June 29, 2012, Sisco's lung cancer was now inoperable.

51. Upon information and belief, on or about September 10, 2012, James presented to Baton Rouge General Medical Center's emergency room ("BRGMC ER"), complaining of shortness of breath.

52. Upon information and belief, that same September 11, 2012, James was admitted to The Carpenter House for hospice care.

53. Upon information and belief, on or about September 20, 2012, James was transferred from The Carpenter House to Capitol House Nursing and Rehabilitation Center for hospice care.

54. Upon information and belief, on or about September 21, 2012, James was transferred via ambulance from Capitol House Nursing and Rehabilitation Center to BRGMC ER. James was admitted to the hospital with respiratory failure and palliative care.

55. Upon information and belief, on or about September 22, 2012, James was admitted to The Hospice of Baton Rouge.

56. Upon information and belief, on or about September 23, 2012, at around 06:00 hours, James was found dead.

57. Upon information and belief, James' death certificate lists terminal lung cancer as the cause of death.

58. Upon information and belief, to date, Jodie and Joshua Sisco continue to visit James Sisco's tomb. Without his support and guidance they have lost their house, their peace of mind, and their sense of security.

COUNT ONE: LOUISIANA MEDICAL NEGLIGENCE

59. The United States of America is liable unto Jodie and Joshua Sisco for conduct which constitutes actionable negligence under Louisiana law including but not limited to Civil Code article 2315.1 and 2315.2.

60. The United States of America's healthcare employees Drs. Hadi, Joseph, and Salas, N.P. had a duty to provide and render medical services to Sisco, as exhibited by the training, skills, and competence of other practicing healthcare providers within their respective specialties.

61. Upon information and belief, by at least March 15, 2011, Dr. Hadi was aware that Sisco had undergone the ordered chest scan on February 25, 2011.

62. Upon information and belief, by March 14, 2012 Dr. Hadi had treated Sisco on at least 7 separate occasions without following up on the February 25 Scan results.

63. Upon information and belief, by April 24, 2012, Sisco had undergone 4 separate imaging studies of his right lung; at least three of them have been ordered by either Dr. Hadi or

Dr. Hadi's Pulmonologist. Each and every single study has evidenced a 6 cm mass in Sisco's right lung. However, Dr. Hadi nor anyone at SCCHC never acted upon any of the prior scans recommendation for a PET Scan or biopsy.

64. Upon information and belief, as early as February 25, 2011, diagnostic medical evidence suggested sampling the spot on James' lung to rule out cancer.

65. Accordingly, the United States of America's healthcare employees Drs. Hadi, Joseph, and Salas, N.P. failed to exhibit and exercise the training, skills, and competence of other practicing healthcare providers within their respective specialties.

66. The aforesaid incident and resultant damages specified herein were proximately and legally caused by the fault and negligence of: The United States of America's healthcare employees' Drs. Hadi, Joseph, and Salas, N.P., including the following negligent acts of omission and/or commission amongst others, that may be shown during the trial hereof:

1. Dr. Hadi's failure to follow up on the February 25 Scan results;
2. Dr. Hadi's failure to order a PET CT scan as a result of the February 25 Scan results;
3. Dr. Hadi's failure to order a lung biopsy as a result of the February 25 Scan results;
4. Dr. Hadi's failure to communicate the February 25 Scan results to Sisco;
5. Dr. Hadi's failure to communicate the February 25 Scan results to Sisco's other physicians;
6. Dr. Hadi's failure to refer Sisco to an oncologist after the June 10 Scan results;
7. Dr. Hadi's failure to follow up on the June 10 Scan results;
8. Dr. Hadi's failure to order a PET CT scan as a result of the June 10 Scan results;
9. Dr. Hadi's failure to order a lung biopsy as a result of the June 10 Scan results;
10. Dr. Hadi's failure to communicate the June 10 Scan results to Sisco;
11. Dr. Hadi's failure to communicate the June 10 Scan results to Sisco's other physicians;
12. Dr. Hadi's failure to refer Sisco to an oncologist after the June 10 results;
13. Dr. Hadi's failure to follow up on the April 23 Scan results;
14. Dr. Hadi's failure to order a PET CT scan as a result of the April 23 Scan results;
15. Dr. Hadi's failure to order a lung biopsy as a result of the April 23 Scan results;
16. Dr. Hadi's failure to communicate the April 23 Scan results to Sisco;
17. Dr. Hadi's failure to communicate the April 23 Scan results to Sisco's other physicians;
18. Dr. Hadi's failure to coordinate Sisco's medical care across all specialties;
19. Dr. Joseph's failure to follow up on the February 25 Scan results;

20. Dr. Joseph's failure to order a PET CT scan as a result of the February 25 Scan results;
21. Dr. Joseph's failure to order a lung biopsy as a result of the February 25 Scan results;
22. Dr. Joseph's failure to communicate the February 25 Scan results to Sisco;
23. Dr. Joseph's failure to communicate the February 25 Scan results to Sisco's other physicians;
24. Dr. Joseph's failure to refer Sisco to an oncologist after the June 10 Scan results;
25. Dr. Joseph's failure to follow up on the June 10 Scan results;
26. Dr. Joseph's failure to order a PET CT scan as a result of the June 10 Scan results;
27. Dr. Joseph's failure to order a lung biopsy as a result of the June 10 Scan results;
28. Dr. Joseph's failure to communicate the June 10 Scan results to Sisco;
29. Dr. Joseph's failure to communicate the June 10 Scan results to Sisco's other physicians;
30. Dr. Joseph's failure to refer Sisco to an oncologist after the June 10 results;
31. Dr. Joseph's failure to follow up on the April 23 Scan results;
32. Dr. Joseph's failure to order a PET CT scan as a result of the April 23 Scan results;
33. Dr. Joseph's failure to order a lung biopsy as a result of the April 23 Scan results;
34. Dr. Joseph's failure to communicate the April 23 Scan results to Sisco;
35. Dr. Joseph's failure to communicate the April 23 Scan results to Sisco's other physicians;
36. Dr. Joseph's failure to coordinate Sisco's medical care across all specialties;
37. Salas, N.P.'s failure to follow up on the February 25 Scan results;
38. Salas, N.P.'s failure to order a PET CT scan as a result of the February 25 Scan results;
39. Salas, N.P.'s failure to order a lung biopsy as a result of the February 25 Scan results;
40. Salas, N.P.'s failure to communicate the February 25 Scan results to Sisco; and
41. Salas, N.P.'s failure to communicate the February 25 Scan results to Sisco's other physicians.

## DAMAGES SUFFERED BY PETITIONERS

67. As a direct result of the breach of the standard of care by: The United States of America's employees: Drs. Hadi, Joseph, and Salas, N.P., Petitioners are entitled to bring suit against the United States of America, including the following actions:

A. A survival action, pursuant to Louisiana Civil Code article 2315.1, by Jodie Sisco for James Sisco's injuries, mental anguish, emotional distress, physical pain and suffering prior to death, lost wages, lost earning capacity, loss of enjoyment of life, medical and burial expenses;

B. A survival action, pursuant to Louisiana Civil Code article 2315.1, by Joshua Sisco for James Sisco's injuries, mental anguish, emotional distress, physical pain and suffering prior to death, lost wages, lost earning capacity, loss of enjoyment of life, medical and burial expenses;

C. A wrongful death action, pursuant to Louisiana Civil Code article 2315.2, by Jodie Sisco for James Sisco's wrongful death, including Ms. Sisco's loss of consortium claim consisting of mental anguish, emotional distress, loss of love and affection, loss of services, loss of society, and loss of support; and

D. A wrongful death action, pursuant to Louisiana Civil Code article 2315.2, by Joshua Sisco for James Sisco's wrongful death, including Mr. Sisco's loss of consortium claim consisting of mental anguish, emotional distress, loss of love and affection, loss of services, loss of society, and loss of support.

LOSS CHANCE OF SURVIVAL

68. Alternatively and/or additionally, Jodie and Joshua Sisco specifically plead a claim for Sisco's lost chance of survival. Upon information and belief, had the United States of America's employees Drs. Hadi, Joseph, and Salas, N.P. acted in a timely manner regarding the February 25 Scan, April 23 Scan, and June 10 Scan, Sisco would have had a better chance of survival. Upon information and belief, by the time the lung biopsy was performed on June 25, 2012, Sisco's cancer had become inoperable.

TIMELINESS

69. Jodie and Joshua Sisco's FTCA claim against the United States of America is timely. On June 5, 2014, as required by 28 U.S.C. §§2401(b) and 2675(a), Jodie and Joshua Sisco presented their claim to DHH – within 2 years of James Sisco's death.

70. To date, more than 6 months have elapsed since Jodie and Joshua Sisco first presented their claim to DHH without the Federal agency making a final disposition of Jodie and Joshua Sisco's claim.

71. Pursuant to 28 U.S.C. §2675(a) at Jodie and Joshua Sisco's exercise, their option to have their instituted claim with DHH is deemed denied as of now.

72. Hence, Jodie and Joshua Sisco's FTCA complaint is timely; filed within 6 months of denial.

PRAYER FOR RELIEF

73. **WHEREFORE,** Petitioners Jodie and Joshua Sisco pray that Defendant the United States of America be served with copies of this Complaint and duly cited to appear and answer same. Further, that after expiration of all legal delays and due proceedings be held, that there be judgment herein rendered in favor of Jodie and Joshua Sisco and against Defendant, in any amount that fully compensates Petitioners for their claims of wrongful death, survival damages, mental anguish, pain and suffering, and medical expenses, including a loss of consortium claim consisting of mental anguish, loss of love and affection, loss of services, loss of society, loss of financial support, past medical expenses, and burial expenses; said sums with legal interest, for all costs of these proceedings and for all general and equitable relief.

Respectfully Submitted,

THE COCHRAN FIRM – METAIRIE

/s/ Jeffrey A. Mitchell

Jeffrey A. Mitchell, T.A. (#19711)
Hugo L. Chanez (#32805)
One Galleria Blvd., Suite 2130
Metairie, LA 70001
Tel: 504.309.5000
Fax: 504.309.5007
jmitchell@cochranfirm.com

Attorneys for Plaintiffs